# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

Carl Fredick Robinson                                                    **Plaintiff**

**v.**                                    **No. 4:13–CV–170-BRW–HDY**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                    **Defendant**

### Instructions for Recommended Disposition

The following recommended disposition will be sent to U.S. District Judge Billy

Roy Wilson.  A party to this dispute may file and serve written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  Failing to object within 14

days may waive the right to appeal questions of fact.[2]  An objecting  party who seeks to

submit new, different, or additional evidence, or to obtain a hearing for that purpose,

must address the following matters as part of written objections: (1) why the record

before the magistrate judge was inadequate, (2) why the evidence was not presented to

the magistrate judge, and (3) details and/or copies of any testimony and/or documents

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

to be proffered at a hearing.  Based on this submission, Judge Wilson will determine the

need for a hearing.

<u>**Recommended Disposition**</u>

Carl Fredrick Robinson seeks judicial review of the denial of his second

application for disability insurance benefits and supplemental security income.[3]  The

record isn't clear about when Robinson last worked, but it may have been in December

2008 when he says he turned his paper route over to his daughter.[4]  Robinson bases

disability on migraine headaches, poor vision, black-out spells, high blood pressure,

arthritis, and pancreatitis.[5]  He also complains about hand pain and bad nerves.[6]

Because Robinson's first application was denied on December 21, 2010,[7] this case

considers whether Robinson has been disabled since December 22, 2010.[8]

---

[3]SSA record at pp. 142 & 148.

[4]*Id*. at p. 191.

[5]*Id*. at pp. 170 & 181.  *But see id*. at p. 340 (indicating he delivered papers in Sept. 2009).

[6]*Id*. at p. 212.

[7]*Id*. at pp. 62, 85-91 & 166.

[8]*Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010) ("The law-of-the-case doctrine generally prevents relitigation of an issue previously resolved, and requires courts to adhere to decisions rendered in earlier proceedings. This doctrine applies to administrative agencies on remand."); *Brachtel v. Apfel*, 132 F.3d 417, 419 (8th Cir. 1997) ("The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings...;" the doctrine

**The Commissioner's decision**.  After considering the application, the Commissioner's ALJ determined Robinson has severe impairments — lumbar degenerative disc disease with end plate irregularity, mild osteopenia, congenital bony canal stenosis in the lower spine, and early changes of lumbar spondylosis; avascular necrosis involving bilateral femoral heads, right greater than left; hypertension; syncope of unknown etiology; pancreatitis (recurrent); and borderline intellectual functioning[9] — but he can do some medium work.[10]  Because a vocational expert identified available work for a person with Robinson's limitations,[11] the ALJ determined Robinson is not disabled and denied the application.[12]

After the Commissioner's Appeals Council denied a request for review,[13] the ALJ's decision became a final decision for judicial review.[14]  Robinson filed this case to

---

applies to administrative decisions).

[9]SSA record at p. 12.

[10]*Id*. at p. 16.

[11]*Id*. at p. 79 (identifying housekeeping and hospital cleaner).

[12]*Id*. at p. 21.

[13]*Id*. at p. 1.

[14]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

challenge the decision.[15]  In reviewing the decision, the court must determine whether

substantial evidence supports the decision and whether the ALJ made a legal error.[16]

This recommendation explains why substantial evidence supports the decision and why

the ALJ made no legal error.

**Robinson's allegations**.  Robinson challenges the determination that he can do

some medium work.  He contends he can't work because he is confined to a wheelchair

and requires a hip replacement.  He claims he meets listing 1.02 due to avascular

necrosis of femoral heads.  He maintains the record doesn't clearly show that the

Appeals Council considered his new evidence.  For these reasons, he maintains

substantial evidence does not support the ALJ's decision.

**Applicable legal principles**.  "Medium work involves lifting no more than 50

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.

If someone can do medium work, [he] can also do sedentary and light work."[17]  In this

---

[15]Docket entry # 1.

[16]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[17]20 C.F.R. §§ 404.1567(c) & 416.967(c).

4

case, the ALJ added the following limitations: (1) no unprotected heights, moving or

dangerous machinery, or driving — based on Robinson's reports of occasional black-

outs due to elevated blood pressure; and (2) unskilled work where interpersonal contact

is incidental to work performed, the complexity of tasks is learned and performed by

rote, involves few variables, requires little independent judgment, and the supervision

required is simple, direct and concrete — based on borderline intellectual functioning.[18]

The question before the court is whether a reasonable mind would accept the evidence

as adequate to show Robinson can do medium work with these limitations.[19]

Robinson's argument about why he can't work turns on evidence he submitted

after the ALJ issued the unfavorable decision.  When the ALJ issued the opinion, the

record consisted of very little medical evidence; it contained nothing preventing

medium work.  At that point, the record established the following:

> 1. **History of pancreatitis**, due to alcohol abuse.  The evidence of pancreatitis preceded the application and thus has little bearing on Robinson's claim.[20]  There is no evidence of treatment of pancreatitis or complications during the relevant time period.

> 2. **Correctable vision**.  A vision exam documents poor vision and recommends corrective lenses.[21]  This evidence has little bearing on

---

[18]SSA record at p. 16.

[19]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[20]SSA record at p. 337 (overnight hospitalization for pancreatitis in Sept. 2009).

[21]*Id*. at p. 361.

Robinson's claim because the recommendation for corrective lenses shows Robinson's vision can be improved with treatment. "An impairment which can be controlled by treatment or medication is not considered disabling."[22]

3. **Degenerative changes in the lumbar spine**. Diagnostic imaging of the lumbar spine shows mild osteopenia, congenital bony canal stenosis, and early changes of lumbar spondylosis.[23] Osteopenia, or low bone density, increases the risk for bone fracture, but it can be treated with calcium, vitamin D, and reducing risk factors like alcohol consumption and tobacco use. The descriptor "mild" suggests no disabling limitation.

Canal stenosis refers to a narrow spinal canal that can cause low back pain from compression of the spinal nerve cord. Because Robinson's condition is "congenital," it has existed since birth. Robinson did heavy work with that condition. The medical evidence does not indicate the condition limits Robinson's ability to work.

Spondylosis refers to degenerative changes like bone spurs and degenerating intervertebral discs; it's often called osteoarthritis. The characterization "early" equates to mild spondylosis. Mild degenerative changes suggest no disabling limitation.

4. **Degeneration of the hips**. Robinson's more significant problem is his hips. Diagnostic imaging showed avascular necrosis of both femoral heads, greater on left.[24] In laymen's terms, the bone tissue at the top of both hip bones is dying due to a lack of blood supply; the right hip is worse than the left. Untreated, the bone could weaken and collapse.

Pain from avascular necrosis of the hip usually lies in the groin, thigh or buttock. Two months before the imaging, Robinson testified about right

---

[22]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[23]SSA record at p. 408.

[24]*Id*. at p. 409.

leg pain,[25] but he had sought no medical treatment for right leg pain. Mostly, he complained about his hands.

The imaging implicates listing 1.02A because it relates to a "major peripheral weight-bearing joint (i.e., hip, knee, or ankle)," but there was no medical evidence indicating avascular necrosis "result[ed] in inability to ambulate effectively." The diagnostic imaging is insufficient to show Robinson meets listing 1.02; it does not establish functional limitation.

5. **Borderline intellectual functioning**. Robinson presented for a mental diagnostic evaluation, but he did not cooperate with the evaluator.[26] His effort was so poor that the evaluator was unable to make any diagnostic conclusion. The ALJ observed that the evaluator for the first mental evaluation — ordered for the first application — determined that Robinson likely functions at the borderline range.[27] That observation supports the ALJ's non-exertional limitations.

6. **Opinion evidence supporting medium work**. Agency medical experts reviewed the medical evidence prior to the hearing and opined that Robinson can do medium work.[28] The experts did not review the recent imaging of the back and hips because Robinson submitted the evidence after the hearing. The lack of review doesn't undermine the opinion because — to be probative — there must be some indication the conditions reflected in the imaging cause functional limitation. There was none.

A reasonable mind would accept the foregoing evidence as adequate to support the ALJ's decision because it shows nothing limiting Robinson from working within the ALJ's limitations.

---

[25]*Id.* at p. 70.

[26]*Id.* at pp. 378-80.

[27]*Id.* at p. 13.

[28]*Id.* at pp. 368-75 & 405.

**New evidence**.  Robinson's primary argument flows from his new evidence: (1) a letter from a nurse practitioner stating that Robinson was recently diagnosed with avascular necrosis of both femurs and requires surgery, is in constant and severe pain, confined to a wheel chair, lacks medical insurance, and cannot work;[29] and (2) an examination report from an orthopaedic surgeon stating that Robinson had marked pain with flexion, internal, and external rotation of the right hip, no collapse of the femoral heads, requires a right hip replacement in the future, and cannot work at this time.[30]

"Where, as here, the Appeals Council considers new evidence but denies review, [the court] must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence."[31]  "Of necessity, that means that [the court] must speculate to some extent on how the [ALJ] would have weighed the newly submitted reports if they had been available for the original hearing…a peculiar task for a reviewing court.[32]

The ALJ would have given the first submission little weight because a nurse practitioner is not an acceptable medical source to establish a medically determinable

---

[29]*Id*. at p. 414.

[30]*Id*. at p. 419.

[31]*Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

[32]*Riley v. Shalala*, 18 F.3d 619, 622-23 (8th Cir. 1994).

impairment,[33] and because there are no treatment notes or medical findings supporting the statements in the letter.[34]  There is only one treatment note from the nurse's clinic; that note predates Robinson's application.[35]  Because a nurse practitioner is not an acceptable medical source, and because the letter was unsupported by medical findings, the letter does not undermine the ALJ's decision.

The second submission does not undermine the ALJ's decision because it shows Robinson's right hip can be treated.  The surgeon recommended a right hip replacement.  The doctor's observations — which follow the nurse's observations — do not mention use of a wheelchair.  Even if the ALJ had given the surgeon's note controlling weight, the ALJ would have not determined Robinson is disabled because the surgeon indicated that Robinson's hip can be treated with a hip replacement.

Moreover, both submissions fall outside the relevant time period.  Robinson maintains his "avascular necrosis developed over a period of time,"[36] but a progression over time does not equate to disability.  During his hearing — four months before the

---

[33]*See* 20 C.F.R. §§ 404.1513 & 416.913 (listing sources who can provide medical evidence to establish impairment).

[34]*Perkins v. Astrue*, 648 F.3d 892, 897-98 (8th Cir. 2011) ("ALJ may discount or even disregard the opinion of a treating physician…where a treating physician renders inconsistent opinions that undermine the credibility of such opinions").

[35]SSA record at p. 295 (Aug. 2010 visit for complaints of abdominal pain, headaches and boil on back of neck).

[36]Docket entry # 12, p. 10.

9

surgeon recommended a hip replacement — Robinson complained little about his right hip.  He focused on hand pain as a primary source of disability.

The record reflects two visits to a medical provider during the relevant time period — the vision exam and the diagnostic imaging of the back and hips.  This level of treatment does not implicate disabling impairment.  Robinson often referred to his lack of medical insurance, suggesting he seeks access to medical treatment,[37] but that is not the standard for obtaining disability benefits.  On the record as a whole, the evidence shows no disabling impairment, notwithstanding the likely need for a hip replacement.

**Conclusion and recommendation**.  Substantial evidence supports the ALJ's decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Robinson's request for relief (docket entry #2) and AFFIRMING the Commissioner's decision.

It is so ordered this   24   day of June, 2014.

_____
United States Magistrate Judge

---

[37]SSA record at pp. 46, 51, 75, 208, 216, 253, 258 & 414.